# NO. 12-09-00442-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MOLLY HARVILL,* <br> *APPELLANT* | *§* | *APPEAL FROM THE 294TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *OSCAR ROGERS,* <br> *APPELLEE* | *§* | *VAN ZANDT COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Molly Harvill appeals the trial court's summary judgment entered in favor of Oscar Rogers. In two issues, Harvill argues that the trial court erred in entering summary judgment in Rogers's favor. We affirm in part and reverse and remand in part.

### BACKGROUND[1]

Both Harvill and Rogers worked in the Grand Saline, Texas office of Westward Communications. In July 2001, Harvill told Rogers that she was glad he was back from vacation. In response, Rogers grabbed Harvill and kissed her. Harvill immediately conveyed to Rogers that his conduct was inappropriate.

Rogers also shot Harvill with rubber bands on several occasions. Initially, he aimed the rubber bands at Harvill's body generally. But eventually, Rogers began to aim the rubber bands at Harvill's breasts. Rogers also brushed against Harvill's buttocks and breasts on several occasions. On another occasion, Rogers positioned himself behind Harvill and pressed his body against her.

---

[1] Because we are reviewing the trial court's determination that Rogers is entitled to judgment as a matter of law, we recite the facts in the light most favorable to Harvill. *See Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 782 (Tex. 2007). We note that Rogers disputes Harvill's version of the facts.

1

Although Harvill voiced her displeasure in response to each of these instances of unwanted touchings, Rogers continued his inappropriate conduct toward her.

On October 11, 2001, Harvill reported Rogers's conduct to her supervisor and alleged that Rogers's conduct constituted sexual harassment. Yet even after Harvill reported Rogers's conduct to her supervisor, Rogers continued to occasionally brush against Harvill's buttocks and breasts.

Believing that Westward was not responding properly to her allegations of sexual harassment, Harvill hired an attorney. On February 19, 2002, Harvill's attorney sent a letter notifying Westward that Harvill was making a sexual harassment claim. After her attorney sent this letter, Harvill, Rogers, and several other employees and former employees of Westward were interviewed regarding Harvill's allegations. Moreover, after Harvill's attorney sent this letter, Rogers's inappropriate conduct toward Harvill ceased.

Despite the cessation of Rogers's inappropriate conduct, Harvill still had stress at work. She overheard her new supervisor claim that he would receive a bonus if he "ran her off." Westward investigated what Harvill termed a "retaliatory racial harassment charge" against her. Furthermore, an unknown individual took pictures of Harvill outside Westward's offices, and Harvill's coworkers treated her in a hostile manner.

Harvill received medical treatment during her dispute with Westward. On February 15, 2002, Harvill was treated by Dr. Sam Raborn. Harvill told Raborn that she was under a lot of stress related to her work because of sexual harassment.[2] Beginning on March 14, 2002, Harvill was treated by Dr. José Martinez. According to Martinez, stress from Harvill's workplace was contributing to her anxiety and hypertension. Martinez further treated Harvill on March 28, 2002. Once again, Martinez's nurse noted that she was under increased stress from work. On April 4, 2002, Martinez advised Harvill to resign because of the stress from her work. As a result, Harvill resigned from Westward on April 9, 2002. In her resignation letter, Harvill states as follows:

> As you know, my health has continually declined since being sexually harassed by Oscar Rogers at work. Also[,] as you are aware, my health has begun to deteriorate at an accelerated rate since my reporting the harassment (not once, but twice).
> The treatment by other employees including my supervisor(s) has become unbearable, and is clearly retaliation for my reporting the repeated violation of my civil rights.

---

[2] Raburn also treated Harvill on July 10, 2001, but there is no indication that the July 2001 treatment was related to stress from work.

While still being held accountable for whatever is done in the office, some of my duties are freely dispersed among other employees who also have access to my money drawer at will.

I have been ostracized by other employees while they openly fraternize among themselves, whispering, laughing and talking; and have been treated rudely in the presence of customers. This is humiliating and degrading.

The stress at work has been compounded by the actions of my supervisor(s) and other employees since my reporting the harassment.

Upon the advice of my physician, I hereby resign as an employee of the *Grand Saline Sun* and Westward Communications, for the sake of my health. This resignation is effective immediately.

Harvill filed suit in the United States District Court, Eastern District of Texas, against Westward and Rogers. The federal court found Westward was entitled to judgment as a matter of law. It further refused to exercise supplemental jurisdiction over Harvill's claims against Rogers for assault and battery and intentional infliction of emotional distress.

Harvill filed the instant suit against Rogers asserting the same claims. Rogers filed a no evidence motion for summary judgment pertaining to Harvill's claim of intentional infliction of emotional distress. The trial court granted Rogers's motion, finding that Harvill presented no evidence that the emotional distress she suffered was severe and no evidence that Rogers's conduct proximately caused her emotional distress. Subsequently, Rogers filed a no evidence motion for summary judgment concerning Harvill's remaining claim of assault and battery. The trial court granted Rogers's motion. This appeal followed.

## MOTION FOR SUMMARY JUDGMENT

In her first issue, Harvill argues that the trial court erred in granting summary judgment in Rogers's favor on her assault and battery causes of action. In her second issue, Harvill contends that the trial court erred in granting Rogers's no evidence motion for summary judgment on her intentional infliction of emotional distress cause of action.

### Standard of Review

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If a defendant is the movant, it must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense. *See* *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has established a right to summary

judgment, the nonmovant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

Additionally, after an adequate time for discovery, a party without the burden of proof at trial may move for summary judgment on the ground that the nonmoving party lacks supporting evidence for one or more essential elements of its claim. *See* TEX. R. CIV. P. 166a(i). Once a no evidence motion has been filed in accordance with rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged evidence. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). We review a no evidence motion for summary judgment under the same legal sufficiency standards as a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *Id.* at 751. If the evidence supporting a finding rises to a level that would enable reasonable, fair minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Id.* Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *Id.*

We review de novo the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* TEX. R. CIV. P. 166a(c). If the trial court's order does not specify the grounds on which it granted summary judgment, we affirm the trial court's ruling if any of the theories advanced in the motion is meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993). However, when the trial court's order specifies the grounds on which it granted summary judgment, the summary judgment can be affirmed only on the grounds specified in the trial court's order. *Id.*

**Assault and Battery**

The common law actions of assault and battery are now addressed as assault. *See Baribeau v. Gustafson*, 107 S.W.3d 52, 60 (Tex. App.–San Antonio 2003, pet. denied); *see also* TEX. PENAL

CODE ANN. § 22.01(a) (Vernon Supp. 2009). The elements for a civil assault are the same as for a criminal assault. *Johnson v. Davis*, 178 S.W.2d 230, 240 (Tex. App.–Houston [14th Dist.] 2005, pet. denied). A person commits assault if the person intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. TEX. PENAL CODE ANN. § 22.01(a)(3). Under this prong of the statute, bodily injury is not required. *Compare* TEX. PENAL CODE ANN. § 22.01(a)(3) *with* TEX. PENAL CODE ANN. § 22.01(a)(1); *see also* *Moore v. Aqrawi*, No. 01-03-00917-CV, 2007 WL 2743494, at *3 (Tex. App.–Houston [1st Dist.] Sept. 20, 2007, no pet.) (actual injury or damages not an element of assault by offensive contact). Further, damages for mental suffering are recoverable without an actual physical injury. *See* *Wal-Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 528 (Tex. App.–San Antonio 1996, writ denied). When an assault does not result in any damages, the assaulted party is entitled to nominal damages. *See* *Flanagan v. Womack*, 54 Tex. 45, 51 (1880).

Here, Rogers's motion for summary judgment was based exclusively on his claim that Harvill presented no evidence of damages caused by Rogers's assaults. However, Rogers's motion for summary judgment was not designated as a "no evidence" motion and contained supporting exhibits. Moreover, on appeal, Rogers claims in his brief that he did not file a no evidence motion for summary judgment. As such, we consider Rogers's motion as a traditional motion for summary judgment.

Rogers argued that he was entitled to judgment as a matter of law because Harvill failed to present evidence that she was damaged by his conduct. However, injury or damages is not an essential element of Harvill's assault by offensive contact cause of action. *See* *Moore*, 2007 WL 2743494, at *3. Thus, even if Rogers's motion successfully demonstrated that Harvill was not damaged by his conduct, he failed to negate at least one essential element of Harvill's cause of action. Therefore, the trial court could not properly grant summary judgment as to Harvill's assault claim against Rogers.[3] Harvill's first issue is sustained.

**Intentional Infliction of Emotional Distress**

We next consider the trial court's grant of Rogers's no evidence summary judgment on Harvill's cause of action for intentional infliction of emotional distress. The elements for intentional infliction of emotional distress are (1) the defendant acted intentionally or recklessly, (2) the conduct

---

[3] If we treated Rogers's motion as a no evidence motion for summary judgment, the result would not change.

was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the emotional distress was severe. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999). Intentional infliction of emotional distress is a "gap-filler" tort, not intended to supplant or duplicate existing remedies. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).[4]

Here, the trial court found that there was no evidence that Rogers caused Harvill's emotional distress or that Harvill's emotional distress was severe. The components of proximate cause are (1) cause-in-fact and (2) foreseeability. *See Western Invs. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005); *HIS Cedars Treatment Ctr. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). The test for cause-in-fact, or "but for" causation, is whether the negligent act or some omission was a substantial factor in bringing about injury and whether the injury would have occurred without the act or omission. *Western Invs.*, 162 S.W.3d at 551; *Mason*, 143 S.W.3d at 799. The evidence must be sufficient for the jury to determine within a reasonable probability that the plaintiff's injury would not have occurred but for the defendant's conduct. *See Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex. 1970). There is no cause-in-fact when the defendant's conduct did nothing more than furnish a condition that made the injury possible or when the defendant's conduct is too remotely connected with the plaintiff's injury. *See Mason*, 143 S.W.3d at 799.

Harvill acknowledges that Rogers's inappropriate behavior toward her ceased after her attorney sent Westward the February 19, 2002 letter setting forth her sexual harassment claim. In her affidavit filed in response to Rogers's motion for summary judgment, Harvill stated, "As a result of the discrimination undertaken against me, I became physically ill." In his deposition testimony, Dr. Martinez stated that he diagnosed Harvill with anxiety disorder causing hypertension and found that this condition commenced on March 14, 2002. Martinez also stated that he believed Harvill's main source of stress was work, and he therefore recommended that Harvill find another job. Martinez did not testify that Rogers's conduct caused any of Harvill's medical conditions.

---

[4] Because emotional distress damages can be awarded as part of assault damages, Harvill's claim of intentional infliction of emotional distress is not being used as a "gap-filler" tort. However, because the trial court's order specifies the grounds on which it was granted, we cannot consider this ground as a basis for affirming the trial court's judgment. *See State Farm Fire & Cas. Co.*, 858 S.W.2d at 380.

Harvill's proof focuses on the discrimination she suffered at Westward, not solely on Rogers's conduct. Significantly, the record reflects that Rogers kissed Harvill in July 2001. However, the record further indicates that Harvill did not seek any medical treatment related to her stress from work until February 2002, which was after she concluded her immediate supervisor had ignored her claim of sexual harassment. Further, the summary judgment proof indicates that Harvill did not begin receiving treatment from Dr. Martinez until March 14, 2002, which was after she concluded that Westward was retaliating against her because of her sexual harassment claim. Moreover, in her letter of resignation, Harvill claimed that her health had "declined since being sexually harassed by Oscar Rogers." Yet she also stated, "The treatment by other employees including my supervisor(s) has become unbearable …." Even viewing Harvill's statement that her health declined after being sexually harassed by Rogers in the light most favorable to Harvill, her statement is not evidence that the decline in her health was caused by Rogers's conduct or that the decline in her health amounted to severe emotional distress.

Based on our review of the summary judgment record, we conclude that evidence that Rogers's conduct led to discrimination by Westward that led to Harvill's severe emotional distress is too attenuated to satisfy the causation requirement at issue. Therefore, we hold that the trial court properly granted Rogers's no evidence motion for summary judgment on this ground. Harvill's second issue is overruled.

## DISPOSITION

Having sustained Harvill's first issue and overruled her second issue, we *reverse* the trial court's summary judgment on Harvill's cause of action for assault against Rogers and *remand* that cause to the trial court for further proceedings in accordance with this opinion. We *affirm* the remainder of the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered July 14, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

7